UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

TRAVIS WOODS,
an individual,

Plaintiff,

v.

CENTRO OF ONEIDA, INC.,
CENTRAL NEW YORK REGIONAL TRANSPORTATION AUTHORITY,
and CITY OF UTICA,

Defendants.

Case No: 6:20-cv-539 (FJS/ATB)

Judge: Frederick J. Scullin

Magistrate Judge: Andrew T. Baxter

**COMPLAINT**

Plaintiff, TRAVIS WOODS, an individual, by and through his undersigned counsel, hereby files this Complaint and sues, CENTRO OF ONEIDA, INC. (hereinafter "Centro of Oneida"), CENTRAL NEW YORK REGIONAL TRANSPORTATION AUTHORITY (hereinafter "CNYRTA"), and CITY OF UTICA (hereinafter "Utica"), for injunctive and declaratory relief, damages, and attorneys' fees and costs pursuant to Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq*. ("Americans with Disabilities Act" or "ADA"), and the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq*. ("Rehabilitation Act" or "RA") and states as follows:

**BACKGROUND**

1. Nearly thirty (30) years after the passage of the Americans with Disabilities Act, Utica and its political entities continue to provide inadequate transportation services for individuals with mobility-related disabilities. Utica, Centro of Oneida, and CNYRTA (hereinafter collectively referred to as "Defendants") are violating the ADA by failing to provide

accessible bus stops.

2. As will be alleged in greater detail below, Defendants have and continue to violate the ADA by failing to provide bus stops which are accessible to persons with mobility-related disabilities.

3. When viewed in its entirety, Defendants' bus system is inaccessible to persons with a mobility-related disability.

4. Upon information and belief, Utica owns the physical bus stops throughout the City of Utica (hereinafter referred to as "the Property" or "Utica bus stops").

5. Upon information and belief, Defendants jointly operate and are responsible for the Utica bus stops.

6. Defendants have failed to bring the Utica bus stops into compliance with the requirements of the ADA and are discriminating against persons with mobility-related disabilities, including Mr. Woods.

7. As will be alleged in further detail below, Defendants have actual knowledge of their obligations under the ADA. Despite actual knowledge of their obligations under the ADA, Defendants are nonetheless constructing the Utica bus stops in a non-accessible manner and/or are failing to bring their non-compliant bus stops into compliance with the requirements of the ADA.

8. As a result of Defendants' ongoing failure to comply with their obligations to construct bus stops in an accessible manner and/or bring the Utica bus stops into compliance with the requirements of the ADA, Mr. Woods has and continues to experience discrimination under Title II of the ADA and the Rehabilitation Act of 1973.

## JURISDICTION AND PARTIES

9. This is an action for declaratory and injunctive relief pursuant to Title II of the Americans with Disabilities Act, 42 U.S.C. §12131 *et seq*., (see also 28 U.S.C. § 2201 and § 2202), and for Plaintiff's claims arising from 29 U.S.C. §794 *et seq*. (Rehabilitation Act). This Court is vested with original jurisdiction pursuant to 28 U.S.C. § 1331 and 1343.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the Defendants' Property, which is the subject of this action, is located in Oneida County, New York.

11. Mr. Woods is a resident of the State of New York, Oneida County.

12. Mr. Woods is a qualified individual with a disability under the ADA. Mr. Woods has paraplegia because of a spinal cord injury.

13. Due to his disability, Mr. Woods is substantially impaired in several major life activities and requires a wheelchair for mobility. Specifically, Mr. Woods is unable to walk, stand, or use his legs without assistance.

14. Upon information and belief, Utica is the political entity which owns the Utica bus stops.

15. Upon information and belief, Centro of Oneida is a domestic governmental entity that is responsible for the maintenance and operation of the Utica bus stops.

16. CNYRTA is a political entity and public transportation provider for Onondaga, Oswego, Cayuga, and Oneida Counties.

17. Upon information and belief, Centro of Oneida is a subsidiary of CNYRTA.

18. In or around April 1, 2005, Oneida County joined CNYRTA and Centro of Oneida assumed

all operations of the Utica Transit Authority.[1]

19. Upon information and belief, Utica has entered into a delegated management contract with Centro of Oneida/CNYRTA, under which Centro of Oneida/CNYRTA is obligated to maintain and operate transportation services in Utica.

20. Upon information and belief, Centro of Oneida and CNYRTA are jointly responsible for administering, operating, constructing, and maintaining the Utica bus stops.

21. Defendants are jointly responsible for complying with the obligations of the ADA.

22. All events giving rise to this lawsuit occurred in Oneida County, Northern District of New York.

**COUNT I**
**VIOLATION OF TITLE II OF THE ADA**

23. Mr. Woods realleges and reavers paragraphs 1-22 as if they were expressly restated herein.

24. Upon information and belief, Defendants are public entities, subject to the ADA, and are responsible for the bus stops and transportation system which form the basis of this suit.

25. According to a plan prepared by the Herkimer-Oneida Counties Transportation Study ("HOCTS") in June 2008, the need for "accessible and affordable transportation options for the elderly, disabled, and low income" was designated as a need with "high importance."[2]

26. However, based on the current state of the Utica bus stops, it is apparent that Defendants

[1] *See* Herkimer-Oneida Counties Transportation Study, Coordinated Human Services Transportation Plan for Herkimer and Oneida Counties, June 2008 ("2008 Study") at p. 15, available at https://www.ocgov.net//oneida/sites/default/files/hoctsmpo/TransportationPlan/hocts%20FINALhsplan%20web_ready%20JUNE2008.pdf (last accessed on 4/28/2020).
[2] 2008 Study at 62.

did not prioritize the goal of making transportation more accessible for people with mobility-related disabilities.

27. A Coordinated Public Transit-Human Services Transportation Plan for Herkimer and Oneida Counties for 2017-2020 ("2017-2020 Plan") issued by the HOCTS on November 21, 2016 included a section for "Unmet Transportation Needs and Gaps." [3] One of the Project ideas from the Transportation Coordination Committee was to install ADA compliant bus/bike/pedestrian facilities along the transit network to "allow for easier navigation by all user groups."[4] This idea was ranked near the bottom of the list that was ordered from most to least critical.[5]

28. Thus, upon information and belief, not only had Defendants taken little no steps to remove the barriers to access that exist at the Utica bus stops between 2008 and 2016, the goal of installing ADA compliant bus facilities had been relegated to a position of less importance.

29. Perhaps due to the perceived unimportance of having accessible bus stops in the City of Utica, many of the Utica bus stops have barriers to access as discussed herein.

30. Upon information and belief, Defendants develop and provide the services and programs offered by and at the Utica bus stops.

31. Upon information and belief, while Utica has outsourced some or all of the maintenance, upkeep, repair, and/or alternation and new construction of the Utica bus stops to Centro of Oneida and/or CNYRTA, Utica is still liable to Mr. Woods by selecting and/or providing

---

[3] *See* Herkimer-Oneida Counties Transportation Study, Public Transit-Human Services Transportation Plan for Herkimer and Oneida Counties, 2017-2020 ("2017-2020 Plan"), at p. 35-36 available at https://www.dot.ny.gov/divisions/policy-and-strategy/public-trans-respository/HOCTS%20-%202016.pdf (last accessed April 28, 2020).

[4] *Id.*

[5] *Id.*

bus stops which are inaccessible. Further, Utica is liable to Mr. Woods for its failure to take the necessary steps to select bus stops which are accessible and to ensure that Centro of Oneida and/or CNYRTA comply with the requirements of Federal Law.

32. Upon information and belief, Mr. Woods has used the fixed route public transportation system offered by Defendants, including the buses and bus stops.

33. Mr. Woods intends on using the Utica bus stops again in the near future for travel and transportation purposes.

34. Mr. Woods has used the City of Utica bus system and will continue to use the bus system for the foreseeable future. Mr. Woods seeks equal access to the Utica bus system, of which accessible bus-stops is an integral component.

35. While using the bus systems, Mr. Woods has tried to access numerous Utica bus stops but has encountered numerous barriers which hindered his ability to access the services and utilize the programs offered at the Utica bus stops.

36. Mr. Woods tried to use the architectural features offered at Utica bus stops but has experienced great difficulty as a result of the noncompliant features, including lack of accessible routes to the Utica bus stops and inadequate or non-existent landing pads at the Utica bus stops.

37. On numerous occasions, Mr. Woods has faced difficulty entering or disembarking from buses as a result of the lack of level landing pads at the Utica bus stops.

38. On many occasions, as a result of a lack of a level landing pad at Utica bus stops, Mr. Woods risk tipping out of their wheelchair while entering or disembarking from a bus or getting to and from the Utica bus stops which are not accessible.

39. Frustrated with the barriers he was encountering on a regular basis at Defendants' Property, Mr. Woods sent an email to adacomplaint@centro.org on April 3, 2020, wherein he stated:

> I am a qualified individual with a disability under Title II of the ADA, 42 U.S.C. § 12131 et seq., and the Rehabilitation Act, 29 U.S.C. § 794, et seq. I am paraplegic and am substantially impaired in major life activities. I require a wheelchair for mobility. This is a request for a reasonable accommodation.
>
> Please be advised that there is widespread non-compliance with the ADA and RA when it comes to the landing pads at the CNYRTA bus stops. To be clear: most of the bus stops I have encountered either do not have big enough landing pads or have no landing pads at all, in violation of the ADA and RA. A few examples in Utica include: the bus stop at by my doctor, Dr. Kodsy, at 1703 Genesee Street; the bus stop at my pharmacy Parkway Drugs, at 350 Leland Ave; all the bus stops that serve Proctor Park; the bus stop at the 900 block of Matthews Avenue where many of my friends live; and the bus stop near the McDonalds near my apartment located at 171 N. Genesee St.
>
> It has been nearly 30 years since the passage of the ADA. I expect that you will remedy the ADA violations and bring the landing pads into compliance with the requirements, provisions, and regulations of the ADA and the Rehabilitation Act within thirty (30) days.

40. On April, 20, 2020, Mr. Woods received the following response from Joshua Gardner, a Specialized Transportation Administrator & Systems analyst at CNYRTA:

> We have received your ADA complaint regarding accessible landing pads at specific bus stops in Utica. At a few of these sites, there are curb cuts within feet of the bus stop where drivers can put the ramp down and allow for safe entering and exiting of the vehicle. At a few of the other locations, there are no sidewalks. In cases like these, drivers can drop off at the driveway entrance of the location. For example, at Parkway Drugs there is no sidewalk. At this location, we can have the driver stop at the driveway entrance to let you off. We also allow for courtesy stops along the route. If you would like to be dropped off somewhere other than the stop, please ask the driver when boarding the vehicle. If there are no safety issues present, we will accommodate courtesy stops.

41. In its response, CNYRTA acknowledges that the Utica bus stops at issue are not compliant

with the ADA and advised Mr. Woods to continue the unsafe behavior of boarding and disembarking from the bus from nearby driveways and/or roadways rather than attempting to make the subject bus stops compliant with the ADA.

42. Mr. Woods plans to return to the Property in the near future to utilize the programs and activities administered at the Property.

43. Mr. Woods continues to desire to use the City of Utica bus system but fears that he will experience serious difficulty or physical harm due to the barriers discussed in paragraph 48 which still exist.

44. The barriers discussed below are excluding Mr. Woods from the programs and activities offered the Property.

45. Mr. Woods plans to and will visit the Property in the future as a patron and visitor and to determine if the barriers to access alleged herein have been modified.

46. Upon information and belief, Defendants have discriminated, and are continuing to discriminate, against Mr. Woods in violation of the ADA by excluding and/or denying Mr. Woods the benefits of its services, programs, and/or activities by failing to, *inter alia*, have accessible facilities within five (5) years of January 26, 1992. Mr. Woods' visits to the Property shows that the program, when viewed in its entirety, is not accessible.

47. Upon information and belief, Defendants have intentionally discriminated against Mr. Woods because they are deliberately indifferent to the strong likelihood that a violation of Mr. Woods' federally protected rights will result from its policy of requiring Mr. Woods to enter and exit the bus from driveways and/or roadways rather than installing landing pads at their bus stops. *See, e.g. Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 275

(2d Cir. 2009).

48. Defendants have failed to provide program Access at Utica bus stops:

a. There are numerous bus stops throughout the City of Utica which are entirely lacking a landing pad, as is set forth in 2006 Americans with Disabilities Act (ADA) Standards for Transportation Facilities, Adopted by the U.S. Department of Transportation,[6] Sections 810.2.1 and 810.2.2. Due to the lack of a landing pad, Mr. Woods has encountered numerous difficulties embarking and alighting from bus stops. The lack of a level landing pad is dangerous for individuals in wheelchairs.

b. Pursuant to the 2006 ADAAG, Section 810.2.1: "Surface. Bus stop boarding and alighting areas shall have a firm, stable surface."

c. Pursuant to the 2006 ADAAG, Section 810.2.2: "Dimensions. Bus stop boarding and alighting areas shall provide a clear length of 96 inches (2440 mm) minimum, measured perpendicular to the curb or vehicle roadway edge, and a clear width of 60 inches (1525 mm) minimum, measured parallel to the vehicle roadway."

[6] Hereinafter referred to as "2006 ADAAG." These standards are accessible at: http://www.access-board.gov/attachments/article/1417/ADAdotstandards.pdf (last accessed on 4/27/2020).




d. Mr. Woods has encountered more than a dozen Utica bus stops that lack landing pads and contain other barriers to accessibility, including but not limited to the following locations:

i. The bus stop at 1703 Genessee Street is located on uneven grass with no flat or stable ground for Mr. Woods to wait for the bus and/or enter and exit the bus;

ii. The bus stops in and around Proctor Park are located on uneven grass and lack curb cuts, making it impossible for Mr. Woods to even access the bus stops to be recognized as a waiting passenger. Mr. Woods must exit into the street when he is disembarking the bus;

iii. The bus stop near 1 Herkimer Road is located on uneven grass and a large utility pole, requiring Mr. Woods to board and disembark from the bus on a sloped driveway;

iv. The bus stop located at 350 Leland Avenue is located on uneven

grass, requiring Mr. Woods to disembark from the bus in the adjoining driveway or roadway;

v. The bus stop located at 303 Genessee St next to the Utica Public Library is blocked by a light pole and located next to a set of steps;

vi. The bus stops on Bleecker Street are located on uneven grass and are inaccessible, necessitating Mr. Woods to have to wait in the roadway or a driveway to enter and exit the bus;

vii. The bus stop near Rutger Street and West Street is located on uneven grass next to a fire hydrant without a nearby curb cut;

viii. The bus stop near Eagle Street and Seymour Avenue is located on uneven grass without a nearby curb cut, necessitating Mr. Woods to board and disembark from the bus from the roadway;

ix. The bus stop near 171 N. Genessee Street is located on uneven grass without a nearby curb cut, necessitating Mr. Woods to board and disembark from the bus from the roadway or inlet driveway for the nearby highway; and

x. The bus stop near 180 N. Genesee Street is located on uneven grass on a broken curb next to broken and uneven pavement, requiring Mr. Woods to board and disembark from the bus from the inlet driveway for the nearby the highway.

e. Defendants have failed to take steps to provide program access at the Utica bus stops so that, when viewed in its entirety, the existing bus stops in the

City of Utica are accessible to and usable by individuals with disabilities.

49. 42 U.S.C. § 12133 provides: "[t]he remedies, procedures, and rights set forth in section 794 of Title 29 shall be the remedies, procedures, and rights this subchapter provides to any person alleging discrimination on the basis of disability in violation of section 12132 of this title."

50. Defendants have discriminated against Mr. Woods by denying him full access to the services, programs, and/or activities by failing to make its facilities readily accessible as required by U.S.C. §12132 and its implementing regulations 49 C.F.R. Part 37.1-37.215 *et. seq*.

51. Defendants have discriminated, and are continuing to discriminate, against Mr. Woods in violation of the ADA by excluding and/or denying Mr. Woods the full and equal benefits of their services, programs, and/or activities by failing to, inter alia, have accessible facilities. Mr. Woods personally experienced the numerous barriers to access on the Property discussed herein.

52. Defendants have violated the ADA by providing their services, programs, and/or activities at an inaccessible facility. In determining the site or location of a facility, Defendants have made site selections that have the effect of excluding individuals with disabilities from, denying them the benefits of, or otherwise subjecting them to discrimination.

53. Defendants discriminated against Mr. Woods by excluding him from participation in, and denying the benefits of, the services, programs, and/or activities at their Property because of Mr. Woods' disability, all in violation of 42 U.S.C. § 12132.

54. Upon information and belief, Defendants continue to discriminate against Mr. Woods by

failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, programs, activities, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to make such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, programs, and/or activities, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

55. Upon information and belief, Mr. Woods has been denied access to, and has been denied the benefits of services, programs and/or activities of Defendants' Property, and has otherwise been discriminated against and damaged by Defendants because of Defendants' discrimination, as set forth above. Mr. Woods will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein. Furthermore, as required by the ADA and other remedial civil rights legislation, to properly remedy Defendants' discriminatory violations and avoid piecemeal litigation, Mr. Woods requires a full inspection of Defendants' Property in order to catalogue and cure all the areas of non-compliance with the ADA.

56. Mr. Woods has retained the undersigned counsel and is entitled to recover reasonable attorneys' fees, costs and litigation expenses from Defendants pursuant to 42 U.S.C. § 12205.

57. Mr. Woods is without adequate remedy at law and is suffering irreparable harm.

58. Pursuant to 42 U.S.C. § 12131, *et seq*., this Court is provided authority to grant Mr. Woods injunctive relief including an order for Defendants to alter the Property to make those

facilities, and/or programs, and/or activities, readily accessible and useable to Mr. Woods and all other persons with disabilities as defined by the ADA.

**COUNT II**
**VIOLATION OF THE REHABILITATION ACT**

59. Mr. Woods adopt and re-allege the allegations contained in paragraphs 1-58 as if fully stated herein.

60. Mr. Woods bring this claim against Defendants, based upon the Rehabilitation Act, 29 U.S.C. §794, *et seq*.

61. The Rehabilitation Act provides that:

> No otherwise qualified individual with handicaps in the United States, as defined by 7(8) [29 USCS § 706(8)], shall, solely by reason of his or her handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service. 29 U.S.C. § 794(a).

62. Upon information and belief, as set forth herein, Defendants have violated the Rehabilitation Act by intentionally excluding Mr. Woods, solely by reason of his disability, from the participation in, and denying him the benefits of, and have otherwise subjected him to discrimination under, Defendants' programs and activities.

63. Upon information and belief, a non-exclusive list of Defendants' violations of the Rehabilitation Act and discriminatory conduct against Mr. Woods are evidenced by:

A. denying Mr. Woods access to, and the opportunity to participate in or benefit

from, the aids, benefits, activities, programs, accommodations and services offered at the Property;

B. by otherwise limiting Mr. Woods in the enjoyment of the rights, privileges, advantages and opportunities enjoyed by individuals without disabilities who receive Defendants' aids, benefits and services;

C. making facility site or location selections that have the effect of discriminating against individuals with disabilities and excluding them from and denying them the benefits of, and defeating or substantially impairing the accomplishment of the objectives of, the services, programs and activities offered by Defendants at the Property;

D. failing to administer services, programs and activities in the most integrated setting appropriate to the needs of Mr. Woods;

E. excluding Mr. Woods from participation in, and the benefits of, Defendants' services, programs and activities as a result of Defendants' Property being inaccessible to or unusable by Mr. Woods; and

F. failing to design and/or construct new facilities, or make alterations to existing facilities, which are readily accessible to and useable by individuals with disabilities.

64. Upon information and belief, there are additional, ongoing violations of the Rehabilitation Act at the Property which Mr. Woods is more likely than not going to encounter upon his future visits to the subject premises. Mr. Woods brings this action:

A. to redress injuries suffered as a result of Defendants' discriminatory actions

and inactions set forth herein;

B. to reasonably avoid further and future injury to Mr. Woods as a result of Defendants' ongoing failure to cease their discriminatory practices as set forth in this action, including correcting violations of the Act;

C. to ensure Defendants' Property is accessible as required by the relevant applications of Title II of the ADA;

D. to be made whole and ensure future compliance; and

E. to reasonably avoid future ADA and Rehabilitation Act litigation involving the same Property and under the same laws as set forth herein with its concomitant impact on otherwise scarce judicial resources.

65. Only through a complete inspection of the Property and related facilities, undertaken by Mr. Woods and/or his representatives, can all said violations be identified and cured so as to ensure access for people with mobility-related disabilities, the primary purpose of this action.

66. Upon information and belief, Defendants are the recipient of federal funds.

67. Upon information and belief, as the recipient of federal funds, Defendants are liable for damages to Mr. Woods as a result of their acts and omissions constituting intentional discrimination.

68. As set forth above, Mr. Woods has been denied access to, and without the relief requested herein will continue to be denied access to the goods, services, programs, facilities, activities and accommodations offered by Defendants solely by reason of his disability, and has otherwise been discriminated against and damaged solely by reason of his

disability as a result of Defendants' Rehabilitation Act violations set forth above.

69. Mr. Woods has been obligated to retain undersigned counsel for the filing and prosecution of this action, and undersigned counsel is incurring reasonable attorneys' fees, including costs and litigation expenses. Mr. Woods is entitled to recover those attorneys' fees, costs and litigation expenses from Defendants pursuant to 29 U.S.C. §794(b).

70. Pursuant to 29 U.S.C. §794(a) this Court is provided authority to grant Mr. Woods injunctive relief including an order to alter the subject premises, facilities, services, activities, programs and accommodations to make them accessible to and useable by individuals with disabilities to the extent required by the Rehabilitation Act; closing all premises and facilities and discontinuing all non-complying services, activities, programs and accommodations until the requisite modifications are completed; and, granting Mr. Woods compensatory damages for Defendants' discriminatory actions.

**PRAYER FOR RELIEF**

WHEREFORE, Mr. Woods prays that:

A. This Court issue a Declaratory Judgment that determines that Defendants are in violation of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq*;

B. This Court issue a Declaratory Judgment that determines that the property, programs and activities owned, operated and administered by Defendants are in violation of the Rehabilitation Act;

C. This Court grant permanent injunctive relief against Defendants including an Order to make all necessary alterations to the Property to make such Property readily

accessible to and usable by individuals with disabilities to the extent required by the ADA; and to require Defendants to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services;

D. This Court enter an Order directing Defendants to alter and modify the Property and its facilities, services, activities, programs and accommodations as appropriate to comply with the ADA and the Rehabilitation Act;

E. This Court award Mr. Woods monetary damages (including nominal damages) pursuant to ADA and/or Rehabilitation Act for the harmed caused by Defendants' discriminatory practices;

F. This Court award Mr. Woods reasonable attorneys' fees, costs and litigation expenses pursuant to 29 U.S.C. § 794a(a)2 and 42 U.S.C. § 12205 and 28 C.F.R. § 35.175; and

G. Such other relief as the Court deems just and proper, and/or is allowable under Title II of the ADA and the Rehabilitation Act.

Respectfully Submitted,

BIZER & DEREUS
Attorneys for Plaintiff
Andrew D. Bizer (NY #4208955)
andrew@bizerlaw.com

3319 St. Claude Ave.
New Orleans, LA 70117
T: 504-619-9999; F: 504-948-9996

By: /s/ Andrew D. Bizer
Andrew D. Bizer