UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

TRAVIS WOODS,
an individual,

                                        **Plaintiff,**

v.

CENTRO OF ONEIDA, INC.,
CENTRAL NEW YORK REGIONAL
TRANSPORTATION AUTHORITY,
and CITY OF UTICA,

                                        **Defendants.**

Case No.: 6:20-cv-539 (FJS/ATB)

---

## CENTRO DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**MACKENZIE HUGHES LLP**

W. Bradley Hunt, Esq.
NDNY Bar Roll Number: 512811
Christian P. Jones, Esq.
NDNY Bar Roll Number: 508467
Attorneys for Defendants Centro of Oneida,
Inc., and Central New York Regional
Transportation Authority
440 S. Warren Street, Suite 400
Syracuse, NY 13202
Tel. (315) 474-7571
Fax. (315) 474-6409

{M0841409.1}

## **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

POINT   I   PLAINTIFF HAS NOT ESTABLISHED AN ADA VIOLATION, UNDER ANY THEORY ................................................................................................. 2

POINT   II   PLAINTIFF WAS NOT DENIED MEANINGFUL ACCESS TO CENTRO'S TRANSPORTATION SERVICES ........................................................................ 4

      A.   Centro's Paratransit Services Provide Plaintiff with Meaningful Access.................4

      B.   Centro Also Provides Meaningful Access by Giving Passengers Flexibility in Deciding Exactly Where to Board and to Alight from Buses..................................7

      C.   Centro Has No Obligation to Modify Unimproved Bus Stops ................................9

POINT   III   PLAINTIFF LACKS STANDING .......................................................................11

CONCLUSION................................................................................................................12

**Introduction**

As discussed in point I below, while Plaintiff Travis Woods claims to have three theories of liability against defendants Centro of Oneida, Inc. and the Central New York Regional Transportation Authority (collectively "Centro"), in essence he has only one: that the Americans with Disabilities Act ("ADA") requires Centro to modify hundreds of unimproved bus stops throughout Utica, New York by installing landing pads that meet current federal specifications applicable to new construction. Plaintiff's theory is wrong, and his motion for summary judgment should be denied. Tellingly, while Plaintiff asks this Court to make an unprecedented ruling that could have a major impact on bus systems throughout the country, he cites only three cases that even involve bus stops – and none of those supports his case.

As discussed in point II below, Centro has not violated the ADA, and its system provides meaningful access to Plaintiff. As discussed in point II-A, Plaintiff makes little effort to show that Centro's paratransit system is deficient. Instead, Plaintiff argues that this Court should ignore the paratransit system (which Plaintiff himself has ignored and never tried to use in his life) and focus solely on the fixed route system. The law does not permit this, but requires that Centro's system be "viewed in its entirety" (49 CFR § 37.61; 28 CFR § 35.150(a)).

As discussed in point II-B, Plaintiff fails to refute that Centro has a policy and practice of providing drivers and passengers with flexibility to determine where buses should stop in the general vicinity of a bus stop sign. He also fails to refute that he has never taken advantage of this accommodation. Plaintiff asserts that the practice is unsafe, but he has no evidence to support that assertion, and his expert did not address this issue. The testimony of Centro's expert and fact witnesses on this point stands unrebutted.

As discussed in point II-C, Plaintiff fails to establish that the landing pad standards on which Plaintiff relies – the ADA Standards for Transportation Facilities (2006) ("DOT Standards") – are even applicable to the bus stops at issue. Indeed, the bus stops were not constructed after the enactment of the ADA but rather are ordinary "unimproved" bus stops where a sign is simply placed in existing ground or concrete to show the general area where a bus will stop. Plaintiff argues that Centro altered the bus stops, so as to trigger application of the DOT Standards for landing pads, merely by replacing existing signs and shelters at certain stops. No legal authority whatsoever supports that theory – a theory that, carried to its logical conclusion, would mandate the construction of new landing pads at innumerable non-constructed, unimproved bus stops throughout the United States.

Finally, as discussed in point III, Plaintiff lacks standing. Plaintiff has no actual injury and no plausible intent to use Centro's bus service in the future. It is undisputed that Plaintiff has taken a bus only once in his adult life. Plaintiff argues that he should not have to demonstrate actual attempts to ride the bus because any such attempts would be futile, but the record simply does not support that claim.

## POINT I

**PLAINTIFF HAS NOT ESTABLISHED AN ADA VIOLATION, UNDER ANY THEORY.**

Plaintiff asserts in his memorandum (at 2) that he has "three theories of liability, any one of which would be sufficient for this Court to grant summary judgment in his favor." In fact, Plaintiff's "three theories" boil down to one basic contention: that Centro has violated the ADA by failing to modify unimproved bus stops throughout Utica so as to provide landing pads that comply with the DOT Standards applicable to new construction.

As discussed in Centro's initial memorandum, to prove an ADA violation, Plaintiff must establish that Centro's system, "viewed in its entirety" (49 CFR § 37.61; 28 CFR § 35.150(a)) denied him "meaningful access" to transportation services. *Henrietta v. Bloomberg,* 331 F.3d 261, 275 (2nd Cir. 2003). This standard essentially corresponds to Plaintiff's second theory – that Centro failed to provide Plaintiff with "program access." Plaintiff's Memo. at 2.

Plaintiff's first and third theories simply elaborate on the one and only reason Plaintiff claims he lacks access – Centro's failure to construct new landing pads at unimproved bus stops throughout Utica. Indeed, Plaintiff acknowledges on the first page of his memorandum that he (allegedly) lacks access "mainly because the bus stops fail to have flat, level concrete landing pads," and Plaintiff's motion papers identify no other reason for the supposed lack of access. Plaintiff's first theory is that Centro has failed to provide a "reasonable modification" (Plaintiff's Memo. at 2) by failing to construct new landing pads. Similarly, his third theory is that Centro has violated the "alteration requirement" (Plaintiff's Memo. at 2) of the ADA by failing to construct new landing pads. Thus, Plaintiff does not really have three separate and independent theories of liability.

For all the reasons discussed below and in Centro's initial papers, Plaintiff has not come close to establishing that Centro has violated the ADA. Furthermore, Plaintiff cites no case, statute, regulation, or other legal authority that specifically supports his novel theory: that unimproved bus stops must as a general matter be modified to include landing pads that meet current DOT Standards governing new construction. Indeed, it bears noting that, in his 34-page memorandum, Plaintiff cites numerous cases setting forth general principles under the ADA but only three cases that actually involve bus stop accessibility at all. *Falls v. Bd. of Comm'rs of the New Orleans Regional Transit Auth.,* 2017 U.S. Dist. LEXIS 98071 (E.D. La. June 21, 2017);

*Belinski v. City of San Bernardino,* 2010 U.S. Dist. LEXIS 159540 (C.D. Cal. Jan. 27, 2010); *Melton v. Dallas Area Rapid Transit,* 391 F.3d 669 (5th Cir. 2004). As discussed below, none of those cases in fact supports Plaintiff's position.

## POINT II

### PLAINTIFF WAS NOT DENIED MEANINGFUL ACCESS TO CENTRO'S TRANSPORTATION SERVICES.

**A. Centro's Paratransit Services Provide Plaintiff with Meaningful Access.**

As discussed in Centro's initial memorandum (point I-A), it is undisputed that Centro operates an ADA-compliant paratransit system, that Plaintiff could use that system if he wanted to, and that Plaintiff has never even tried to use it. Plaintiff does not dispute any of these points in his motion papers.

Instead, Plaintiff argues that he – and this Court – can simply ignore the paratransit system because it is "a distinct service from fixed route service." Plaintiff's Memo. at 26. This is incorrect. The question here is not whether the Utica fixed route service complies with the ADA as a "distinct service"; the question is whether the Utica system "viewed in its entirety" (49 CFR § 37.61) – including both the fixed route service and the paratransit service – provides Plaintiff meaningful access.

Indeed, the caselaw is quite clear that a court must consider paratransit services in determining whether a bus system provides meaningful access. As discussed in Centro's initial memorandum, in *Neal v. Metro Reg'l Transit Auth.*, 2019 U.S. Dist. LEXIS 133707 (N.D. Ohio Aug. 8, 2019), the court dismissed a complaint alleging that a fixed route bus system violated the ADA, because the defendant "offers paratransit services specifically as a complement service, but plaintiffs have not alleged they were denied meaningful access to those services." *Id. *18.* The *Neal* court concluded that: "***plaintiffs cannot maintain their Title II or Rehabilitation Act claims***

because they have not properly alleged that they were denied meaningful access to Metro's services *where Metro offers paratransit services specifically as a complement service, but plaintiffs have not alleged they were denied meaningful access to those services*." Id. at *18 (emphasis added).

Other cases support the same principle. *See Guerra v. W. Los Angeles Coll.*, 2018 WL 4026452, at *8 (C.D. Cal. Aug. 20, 2018) ("there is no precedential support for Plaintiffs' argument that a publicly funded entity...may not rely upon other well-established publicly funded services, such as a...paratransit service, to assist in providing meaningful access…."), reversed in part on other grounds, 2020 WL 2086547 (9th Cir. April 30, 2020); *see also Access Ctr. for Indep. Living v. WP Glimcher, Inc.*, 2018 WL 2763453, at *6 (S.D. Ohio June 8, 2018) (mall not in violation of the ADA because there was paratransit service available to take disabled patrons to its entrance); *Kirola v. City of San Francisco*, 860 F.3d 1164, 1183 (9th Cir. 2017) ("[t]he public transportation and paratransit services are the sorts of 'other methods' that can satisfy program access even if other particular methods of benefitting from the program are inaccessible.").

Plaintiff's motion papers do not address this settled law. Instead, Plaintiff's argument – indeed, his *only* argument regarding the adequacy of Centro's paratransit service – is that the paratransit service does not provide meaningful access because a passenger must (generally) make a reservation by 5:00 on the day before the trip. Plaintiff's Memo. at 28. But as discussed in Centro's opening memorandum (at 9), the requirement to schedule trips a day in advance is consistent with the ADA paratransit regulations, which specifically provide that a paratransit system complies with the ADA by providing trips responsive to requests made "the previous day." *See* 49 C.F.R § 37.131(b). Nothing in the law supports imposing a novel requirement that a paratransit service must accept immediate, same-day reservations.

Furthermore, Plaintiff's argument that a paratransit service can provide meaningful access only by allowing same-day reservations is contrary not only to the regulations but also to the Fifth Circuit's decision in *Melton v. Dallas Area Rapid Transit,* 391 F.3d 669 (5th Cir. 2004) – one of only three cases involving bus stop accessibility that Plaintiff cites.

In *Melton,* the Fifth Circuit affirmed summary judgment for a transit operator, in a case where the plaintiff sought modification of a paratransit boarding location. Plaintiff cites *Melton* in his memorandum (at 27) for the uncontroversial principle that "paratransit is meant to act as the disability complement to established fixed route transportation services." 391 F.3d at 675. But Plaintiff neglects to cite the immediately following language in *Melton.* This language refutes Plaintiff's argument about same-day reservations by providing that an ADA-compliant paratransit service (such as Centro's) need not modify its service in response to special customer requests, as follows:

> Because paratransit service is meant to act as the disability complement to established fixed route transportation services, this comprehensive regulatory scheme signals that no interim extra-plan modification is statutorily or otherwise required by a public entity when the public entity is properly operating under a FTA-approved plan. ***The FTA-approved plan is itself the accommodation*** to the disabled by the public transportation entity. ***It is the violation of the plan itself that constitutes the prohibited discrimination under title II, not the failure to modify the plan to address particularized complaints***. The Meltons do not assert that DART is operating in a manner that is not in accordance with its FTA-approved paratransit plan and, therefore, the ADA does not impose a requirement upon DART to modify its plan to serve Jason Melton's particular demands.

*Melton v. Dallas Area Rapid Transit,* 391 F.3d at 675 (emphasis added).

In sum, nothing in the law supports a finding that Centro's paratransit service, which undisputedly complies with the ADA, fails to provide meaningful access when it is considered – as it must be – in connection with Centro's system as a whole. *See Neal,* 2019 U.S. Dist. LEXIS 13307, *18 (paratransit services are "***integral to plaintiffs' claims***" regarding the fixed route

system) (emphasis added). That Plaintiff has made the choice not to use the paratransit service does not somehow change the law so as to preclude this Court from considering that service in determining whether Centro's system provides meaningful access.

### B. Centro Also Provides Meaningful Access by Giving Passengers Flexibility in Deciding Exactly Where to Board and to Alight from Buses.

As discussed in Centro's opening memorandum (point I-B), it is undisputed that Centro has a practice of providing passengers and drivers flexibility in determining exactly where buses should stop, within the general area of the sign. In his motion papers, Plaintiff does not even try to dispute that this practice exists, or that he has chosen not to take advantage of this reasonable accommodation. Instead, Plaintiff asserts throughout his memorandum, with no evidentiary support, that this reasonable accommodation is a dangerous practice that amounts to "risking his life." *See, e.g.,* Plaintiff's Memo. at 1.

This is simply wrong. Plaintiff points to no actual evidence that stopping a bus a short distance from a bus stop sign must be dangerous. As Centro's transit expert David Rishel explained in his report: "It is simply normal, good customer service in the transit industry to vary a stop for the convenience of the passenger when it is easy and safe to do so." Rishel Aff. ex. A at 7. Indeed, Rishel explained in his deposition that this practice is "incredibly common." Hunt Aff. ex. P at 60. Furthermore, notwithstanding Plaintiff's assertion in his memorandum (at 1) that this practice involves buses stopping in "active driveways and thoroughfares," Rishel explained in his deposition that "when a bus stops, a bus blocks the area around the door affording some security." Hunt Aff. ex. P at 59. Plaintiff points to no evidence refuting this point.

It is also undisputed that every specific bus stop sign that Plaintiff identified in his Complaint, interrogatory responses, and deposition has nearby areas that are suitable for boarding and alighting. Rishel personally examined each of the stops and reached that conclusion. Rishel

Report at 10-31. Plaintiff's expert did not consider, much less rebut, this conclusion in his report or his rebuttal report. *See* Heybeck Report and Rebuttal Report, exs. M and N to Hunt Aff.

Centro's witnesses Joseph DeGray and Joshua Gardner also testified that Centro's practice of allowing flexibility in determining where a bus will stop is, in practice, not dangerous. *See* DeGray Dep. (Hunt Aff. ex. I) at 42, 45; Gardner Dep. (Hunt Aff. ex. H) at 39. Again, Plaintiff has no evidence to the contrary.

The decision in *Belinski v. City of San Bernardino,* 2010 U.S. Dist. LEXIS 159540 (C.D. Cal. Jan. 27, 2010), which Plaintiff cites in his memorandum (at 15, 22), is instructive and supports Centro's position on this issue. In *Belinski,* the court found issues of fact requiring denial of the parties' summary judgment motions where the transit operator claimed to have a policy similar to Centro's "allowing disabled passengers to disembark at the nearest, safe, accessible area near inaccessible stops," 2010 U.S. Dist. LEXIS at *15, but the plaintiff – unlike Plaintiff in our case – submitted evidence that "Plaintiff and other disabled passengers have been told by drivers that such stops are not allowed." *Id.*

Here, unlike in *Belinski,* there is nothing in the record rebutting the evidence that Centro provides a safe, legal, reasonable accommodation by permitting drivers and passengers flexibility in determining where buses should stop. The FTA, moreover, specifically endorses this practice. *See* FTA Circular (ex. R to Hunt Aff.) at 2-22 (authorizing practice in which drivers "slightly adjust the boarding location so that the individual using a wheelchair may board from an accessible location"). In fact, the FTA Circular provides that: "***Individuals with disabilities also have the right to decide the level of risk they are willing to take*** to travel independently." *Id.* at 2-2 (emphasis added).

Plaintiff simply chooses not to take advantage of Centro's reasonable accomodation (and, in fact, not to ride the bus at all).

**C. Centro Has No Obligation to Modify Unimproved Bus Stops.**

As discussed in point I-C of Centro's initial memorandum, the law is absolutely clear that only bus stops constructed or altered after the 1992 enactment of the ADA must have landing pads meeting the DOT Standards. Plaintiff does not argue otherwise in his motion papers. Furthermore, it is also undisputed that the unimproved Utica bus stops at issue in this case are not constructed but are "simple signposts in the ground that mark the general area where a bus will stop." Rishel Report (ex. A to Rishel Aff.) at 6. Plaintiff's expert did not even assess whether the Utica bus stops were constructed or modified after enactment of the ADA. Heybeck Dep. (Hunt Aff. ex. O) at 31.

Perhaps recognizing that this point undermines his case, Plaintiff makes a novel argument in his memorandum (at 30-32): that Centro effectively altered the Utica bus stops, so as to trigger the requirement to construct new landing pads, merely by replacing existing signs and shelters at certain stops, and by installing signs that contain the international symbol of accessibility and the words "ACCESSIBLE STOP." Plaintiff cites no case that has ever so ruled.

Indeed, the two cases that Plaintiff cites on this point do not involve bus stops and were decided under Title III rather than Title II of the ADA. *See Tatum v. Doctor's Assocs., Inc.,* 2016 WL 852458 (E.D. La. Mar. 4, 2016); *Roberts v. Royal Atl. Corp.,* 542 F.3d 363 (2nd Cir. 2008). Both of these cases, moreover, make the point that, under Title III, ADA new-construction requirements apply only to alterations that "fundamentally change the use of a facility." *Roberts,* 542 F.2d at 370; *see also Tatum,* 2016 WL 852458 at *4 ("painting is not an alteration unless it affects the usability of a facility"). Here, replacing existing signs and shelters did not change the

usability of the existing, unimproved Utica bus stops.  Moreover, the record is undisputed that Centro included the symbol of accessibility and the words "accessible stop" on its signs and schedules not to indicate anything about the *stops* themselves but to reflect that all of Centro's *buses* are accessible and ADA-compliant.  *See* DeGray 30(b)(6) Dep. (Hunt Aff. ex. K) at 7-9, 18-21.  Indeed, the Centro bus schedules containing the symbol of accessibility say explicitly that the symbol refers to Centro's buses rather than the bus stops.  *See* DeGray 30(b)(6) Dep. at 18-21.[1]

Notably, the total absence of Utica bus stops constructed or altered since 1992 provides a clear basis for distinguishing this case from the final bus stop case on which Plaintiff relies in his memorandum (at 16, 22), *Falls v. Board of Comm'rs of the New Orleans Regional Transit Auth.,* 2017 U.S. Dist. Lexis 98071 (E.D. La. June 26, 2017).  In *Falls,* the court found that certain bus stops were inaccessible where – unlike in this case – "the City has discriminated in relation to modified or constructed facilities after 1992 …. the Plaintiffs' expert reported that 60 of 69 *newly constructed/modified bus stops* failed to comply with the applicable accessibility requirements of the ADA."  *Id.* at *9-10 (emphasis added).

Here, unlike in *Falls,* Plaintiff's expert did not even try to determine if any of the Utica bus stops were newly constructed.  Heybeck Dep. (Hunt Aff. ex. O) at 31.  Plaintiff's entire case rests on the contention that Centro should construct landing pads meeting the current DOT Standards applicable to new construction.  For the reasons discussed above, the DOT Standards do not apply to the Utica bus stops.

---

[1] While Plaintiff states in his memorandum (at 9) that Centro installed bus stop signs including the accessibility symbol in the year 2015, in fact the Centro installed the modified signs in 2005.  *See* DeGray 30(b)(6) Dep. (Hunt Aff. ex. K) at 7.

# POINT III

# PLAINTIFF LACKS STANDING.

Plaintiff's summary judgment motion also should be denied, and his Complaint dismissed, because he lacks standing. As discussed in point III of Centro's initial memorandum, the record establishes that Plaintiff has actually ridden a Centro bus only once in his adult life, approximately one year ago; that he never even tried to ride a bus in all the years before then; and that he could offer no corroborating details about any of his alleged recent attempts to ride a bus.

Plaintiff does not dispute these facts in his motion papers. Instead, he argues in his memorandum (at 19-20) that he need not demonstrate any actual attempts to ride a bus, because trying to use the Utica bus system would be a "futile gesture" due to the lack of landing pads. For all the reasons discussed above, Plaintiff is wrong – the Utica fixed route and paratransit system is accessible; it is utilized by other persons who use wheelchairs; and if Plaintiff were to actually try to use the system his efforts would not be futile. But in any event, regardless of the accessibility of the system, the law requires Plaintiff to demonstrate a "plausible intention" to use the system in the future. *Perdum v. Forest City Ratner Cos.,* 174 F. Supp. 3d 706, 715 (E.D.N.Y. 2016) (quotation marks omitted). Plaintiff simply has not offered any facts to demonstrate a "plausible intention" here.

## Conclusion

For these reasons, this Court should enter an Order pursuant to Fed. R. Civ. P. 56 denying Plaintiff's motion for summary judgment, granting Centro summary judgment, dismissing the Complaint with prejudice, and granting Centro such other relief as the Court deems proper.

Dated: October 15, 2021

**MACKENZIE HUGHES LLP**

By: */s/* W. Bradley Hunt
    W. Bradley Hunt
    Bar Roll No. 512811
    bhunt@mackenziehughes.com
    Christian P. Jones
    Bar Roll No. 508467
    cjones@mackenziehughes.com
Attorneys for Defendants Centro of Oneida, Inc., and Central New York Regional Transportation Authority
440 S. Warren Street, Suite 400
Syracuse, NY 13202
Tel. (315) 233-8233
Fax. (315) 474-6409